Lloyd B. SHARP and Calvin Edwards, Appellants,

v.

H. C. ROOT, Appellee.

No. 16133.

United States Court of Appeals
Fifth Circuit.

Jan. 18, 1957.

L. A. White, Culton, Morgan, Britain & White, Amarillo, Tex., for appellants, Lloyd B. Sharp and Calvin Edwards.

J. O. Fitzjarrald, Amarillo, Tex., Herbert L. Arthurs, Bristow, Okl., Arthurs & Blackstock, Bristow, Okl., and Merchant & Fitzjarrald, Amarillo, Tex., for appellee.

Before BORAH, TUTTLE and CAMERON, Circuit Judges.

TUTTLE, Circuit Judge.

█ This appeal from a verdict for the plaintiff in a personal injury action raises two issues: (1) Whether the evidence sufficiently raised the issue of "joint enterprise" between Root and the driver of the automobile in which they were riding so that the court was in error in refusing to charge the jury on the theory of imputed contributory negligence as a bar to plaintiff's right to recover, and (2) whether the court erred in refusing to declare a mistrial because of, or charging the jury to disregard, certain statements made by plaintiff's counsel in the closing argument as to the financial condition of defendants.

The pertinent facts are as follows:

The accident out of which the present case arose occurred in New Mexico when the driver of the defendants' truck made an illegal left turn, and the car in which plaintiff was a passenger crashed into it from the rear. From the evidence the jury could have concluded that the driver of the latter car was going at an unsafe speed.

The occupants of the car were the following: Root, the plaintiff-appellee, and his wife (the suit being for injuries suffered by these two); their two daughters and their respective sons-in-law, one of whom, Hill, owned the car, while the other, Coleman, was driving at the time of the accident; one grandson.

The origins of the trip were apparently as follows: Plaintiff's brother having died in California, plaintiff and his wife decided to attend the funeral, driving from their home in Oklahoma in their pick-up truck. After some conversations with and among their daughters and sons-in-law, Hill suggested that they all go in his car.

There is considerable evidence that Root paid some, if not most of the expenses of the trip, at least on the way to California—the accident occurred on the return trip.[1]

There is very little evidence of the formulation of any agreement among the three families about how expenses should be divided.

From time to time both of the sons-in-law and both of the daughters drove, but

---

1. Some of the pertinent testimony on the subject of payment follows:

Coleman, owner of the car and son-in-law of Root was testifying:

"Q. Mr. Coleman, who was paying the expenses on this trip? A. Well, sir, we were all paying the expenses.

"Q. Mr. Root paying part of them? A. He paid some; we all paid some."

Later he testified:

"Q. You do know Mr. Root or Mrs. Root or both of them paid the larger portion of the expenses of this trip? A. Well, sir, I wouldn't say the 'larger portion.' I would say they paid their share of it.

"Q. Didn't you say awhile ago they paid most of them? A. Well, by the 'larger share' you can go way up on that. I would say they paid their share of it and maybe just a little more while they was driving."

plaintiff and his wife apparently never did.

Plaintiff and defendant are in fundamental agreement about the definition and legal effect of a joint enterprise in this situation. In particular, both quote from 38 Am.Jur., Negligence § 237:

"If two or more persons unite in the joint prosecution of a common purpose under such circumstances that each has authority, express or implied, to act for all in respect to the control of the means or agencies employed to execute such common purpose, the negligence of one in the management thereof will be imputed to the others. Accordingly, if two persons are engaged in a joint enterprise, the contributory negligence of one will bar recovery by either against a third person."

And as more particularly related to automobiles, from 5 Am.Jur., Automobiles § 501:

"In order to constitute a joint enterprise so that the negligence of the driver of an automobile may be imputed to an occupant of the car, it is generally held that there must be a common purpose and a community of interest in the object of the enterprise and an equal right to direct and control the conduct of each other with respect thereto. In other words, the passengers, as well as the driver, must be entitled to a voice in the control and direction of the vehicle."

Defendant now argues in effect that:

1. From the evidence, taken most favorably from the view of defendant, as it should be in considering this point, the jury under proper instructions could have found a joint enterprise as defined above.

2. a. It is fairly clear that Root made substantial payments to cover the running expenses of the trip.

b. From the evidence of such payment it is possible to imply an agreement to pay:

i) either an over-all agreement made at the beginning or at some later point of the trip—though plaintiff and his family denied any agreement;

ii) or a series of ad hoc agreements made each time that plaintiff offered to pay and Hill permitted him to do so.

c. From these agreements and from the general circumstances of the trip and its origins (Root having first decided that he would go to attend his brother's funeral) the jury might have found that plaintiff had at least some control over the operation of the car and the conduct of the driver.

Plaintiff contends that:

1. Defendant has not demonstrated that anyone except Hill had a right to control the car—it was he who selected the drivers from time to time.

2. Defendant has not demonstrated any *advance agreement* among the families that plaintiff should pay any part of the expenses, and that in the absence of proof of an express right of control, such a right can be imputed only from such an agreement and not from the mere fact of payment.

Although numerous cases are cited by both parties for instances in which joint enterprise has been either found or denied as a matter of law, or left for decision by the jury, only one New Mexico case has been cited: Silva v. Waldie, 1938, 42 N.M. 514, 82 P.2d 282, in which the Supreme Court of New Mexico reversed a directed verdict for defendant, holding that a jury must decide (1) the negligence of defendant and its proximate consequences; (2) the negligence of the driver of plaintiff's car, etc.; (3) whether there was a joint enterprise which would result in the imputation of the driver's negligence to the passenger; (4) the passenger's own direct negligence. It appeared that the plaintiff-passenger had been invited to join the driver on a trip, and that without being requested to do so he paid for part of the gas and oil. Defendants here feel that the case stands for the proposition that

joint enterprise is a matter for the jury if as little as unsolicited payment of some expenses is shown, while the court below felt that it is improper to draw such a conclusion from the case since it does not appear on what basis the trial court there had ruled against plaintiffs —and some of the language of the Supreme Court even lends itself to the suggestion that under the facts there recited there was no joint enterprise as a matter of law (though the court had been able to reverse merely on the ground that it was incorrect for the trial court to hold that there was joint enterprise as a matter of law); the boundaries of the middle ground, where the matter must be left to the jury, were certainly not well explored. The court below then quoted a number of Texas cases showing instances in which courts had found it unnecessary to submit the matter of joint enterprise to the jury as having been insufficiently supported; defendants distinguish all these cases as involving a less consistent pattern of payment of expenses by the passenger than shown here.

In any event it appears from the Silva case that New Mexico's law of joint enterprise is no different from that of most American jurisdictions, and that the courts there will quote liberally from out-of-state cases and legal compendiums where, as here, their own law is not fully developed. The point here relevant is the subject of § 491 of the Restatement of Torts: Negligence; the effect of sharing expenses is discussed particularly in Comments c and g to that section. From the former it appears that a *"prearrangement for a substantial sharing of the expenses of the trip"* is a necessary condition for a finding of joint enterprise, while from the latter it appears that it is not, however, a sufficient condition since one or more of the following additional factors must be found: (1) a common destination; (2) a power to determine or change the route from time to time by mutual agreement; (3) common, non-business purpose of the trip. These additional conditions (at least 1 and 3) having been met the situation is this: defendants wish to have the jury permitted to infer an agreement to pay from the actual fact of payment, and from the inferred agreement, if found, they would contend that the relationship of joint enterprise would arise, carrying with it a right of control over the operation of the car.

We think it clear that there was ample evidence from which a jury could have concluded that this was a common enterprise. The facts that it was originally Root's project; that the daughters wanted to go; that they knew Root would pay his share and more;[2] and that he actually did so, all combine to create a relationship that the jury might well have concluded met the test of joint enterprise agreed upon by the parties.

■ It was therefore error for the court not to charge the theory of joint enterprise when objection was made by counsel at the trial to the charge as given, expressly pointing out the grounds for the objection.[3]

2. Mr. Hill, the owner of the car was testifying:
"A. Mr. Root is this kind of a fellow: He pays his way wherever he goes.
"Q. That's right. And you knew he was going to pay all the expenses? A. I knew he would if we would let him.
"Q. If you would have let him you knew he would have paid all the expenses of this trip? A. That's right."

3. The trial court undertook to charge the theory of plaintiff and defendants, but did not include a charge on joint enterprise, although this defense was pleaded by the answer. No written request to charge was made as provided for in rule 51, Fed.Rules Civ.Proc., 28 U.S.C.A. The appellee made no point of this on appeal. Counsel on the other hand agreed in oral argument here that appellant's counsel had orally requested such a charge of the trial judge in conference prior to the giving of the charge, and he answered that he would not include such a charge, since he deemed it inapplicable on the record as it then stood. While it is, of course, much better practice for parties to make requests to charge in writing, we think it within the province of the appellate

We need not pass upon the second alleged error, since upon a new trial counsel will certainly take proper pains not to introduce anything in their respective arguments to the jury that is inappropriate or not based on the evidence.

We conclude that the failure of the court to charge the defendant's theory of joint enterprise was prejudicial error for which the judgment must be set aside and a new trial granted.

Reversed and remanded.

CAMERON, Circuit Judge, dissents.

court to consider a failure to charge in the present circumstances notwithstanding a failure to make a written request. See Winstead v. Hildenbrand, 81 U.S. App.D.C. 368, 159 F.2d 25 and Swiderski v. Moodenbaugh, 9 Cir., 143 F.2d 212. In Dallas Railway & Terminal Co. v. Sullivan, 5 Cir., 108 F.2d 581, while this Court said that a request to charge must be in writing we nevertheless there considered the alleged error even though the refused request was not in writing. Moreover, we can always notice plain error when necessary to prevent a miscarriage of justice. Dowell, Inc., v. Jowers, 5 Cir., 166 F.2d 214, 2 A.L.R.2d 442.