Colon **WARD**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 18833.

United States Court of Appeals Fifth Circuit.

Nov. 29, 1961.

Rehearing Denied Jan. 16, 1962.

A. G. Campbell, Jr., of Campbell & Andrews, DeFuniak Springs, Fla., for appellant.

Edward L. Stahley, Asst. U. S. Atty., Tallahassee, Fla., C. W. Eggart, Jr., Acting U. S. Atty., Pensacola, Fla., for appellee.

Before BROWN, GEWIN and BELL, Circuit Judges.

GEWIN, Circuit Judge.

The Defendant Colon Ward appeals from a judgment of conviction under Count One of an indictment in which he was charged with offering money to an impaneled petit juror with intent to influence such juror's action in violation of Title 18 U.S.C. § 206.[1] The defendant raises three points on this appeal which are as follows: (a) That the trial court erred in admitting the testimony of the Juror Stanley Morse, a witness for the Government, as to statements made to Morse by the Witness William Staley not made in the presence of the defendant; (b) That the trial court erred in denying defendant's motion for judgment of acquittal; and (c) In refusing to grant defendant's motion for a new trial. To gain a proper understanding of the points raised by the defendant, some statement of the evidence is necessary.

Two brothers of the defendant were indicted on a "moonshine" liquor charge and were awaiting trial before the United States District Court for the Northern District of Florida on Wednesday, June 8, 1960. The session of court commenced on Monday, June 6, 1960. The defendant obtained a list of prospective jurors and went to see John Henry Miller, a friend, to discuss with him the list of jurors from which a jury would be selected to try his brothers. Stanley Morse was on the jury list. Apparently, Miller knew little about the jurors on the list, but informed the defendant that William Staley, who lived in Marianna, Miller's uncle by marriage, could possibly help. The defendant and Miller then proceeded to Marianna, Florida to see Staley. Staley was located and he, Miller and the Defendant Ward had a conversation about the jury. In the conversation it developed that Staley had a friend on the jury, namely, Stanley Morse. Apparently, Staley also knew at least one other juror on the list. We quote from Staley's testimony:

"And they asked me could I look over the jurors and see if there was anyone that I thought we could talk to. So Dexter McCaskill was on the list and I mentioned his name and they said that they had already talked with Dexter McCaskill. So, I read the list on down and Stanley Morse, Jr. was on there, so I told them I might could talk to that old boy."

1. The indictment contained two counts, the second of which charged the defendant with obstruction of justice in violation of Title 18 U.S.C. § 203. At the conclusion of the evidence, the District Court required the Government to elect under which of the two counts it would proceed and Count One was chosen. The Court ordered Count Two stricken.

The defendant claims that it was his purpose to determine whether any of the jurors "were against moonshine or anything like that". In his brief the defendant states that his purpose in seeing Miller and Staley was to determine whether they knew any of the jurors "or could contact any of the jurors to ascertain their feelings concerning 'moonshine' cases"; that since Miller did not know any of the jurors they went to see Staley who lived in Marianna, Florida, thinking that Staley "might know some of the jurors and prove helpful in 'canvassing their attitude', or 'feeling their pulse' ". It is admitted that Staley was requested to give such assistance, but the defendant stoutly contends that he did not authorize or direct Staley to offer money to the Juror Morse; and did not even suggest that he do so.[2]

The Government contends that the defendant told Staley that he desired to get one juror to hang the jury; that the defendant directed Staley to see the prospective juror Morse and advise Morse that he would be paid $100.00 before the trial and $100.00 after the trial whether or not he actually served on the jury which was to try defendant's brothers; that the defendant arranged with Staley to call Miller after seeing Morse and advise Miller whether Morse was willing to accept the offer. It is admitted that the Defendant Ward gave Staley $10.00 because as the defendant stated, he "wanted to give him something for his time because he would like for him to take up some of his time to see if he could find out anything about them". The defendant contends he merely stated to Staley that it would be worth $100.00 to gain some jury information.

Miller, Staley and the Juror Morse all testified as witnesses for the Government. Staley testified that according to the prior arrangements agreed upon between Staley and the Defendant Ward, he did contact Juror Morse, explained the offer of $200.00, which was promptly refused by Morse with the statement, "No, I can't do that.". Thereafter, Staley called Witness Miller and told him, "The man did not want to sell the boat.". Miller testified that he received the call from Staley and reported the conversation to the defendant. Staley testified to substantially all details of the arrangements between him and the defendant without objection on the part of the defendant. During the trial the defendant did object to the testimony concerning the conversation between Staley and the Juror Morse, which conversation was not in the presence of the defendant. The trial court admitted the testimony over the defendant's objection. The jury found the defendant guilty; and accordingly, the Court adjudged defendant to be guilty as charged and convicted, and he was sentenced to a term of three years.

The first point argued by the defendant is that the Court should not have allowed the jury to receive testimony concerning the conversation between Staley and Morse. Both Staley and Morse gave testimony as to the conversation. The defendant readily concedes that as a general rule a jury is entitled to hear testimony concerning statements made by an accomplice although such statements were not made in the presence of the defendant. The defendant contends that Staley was not his accomplice and that the only evidence tending to establish Staley's position as an accomplice was

2. The following comes from the Defendant's brief: "The Appellant's position as to what actually transpired is that he consulted John Henry Miller to determine whether or not he knew any of the Jurors or could contact any of the Jurors to ascertain their feelings concerning 'moonshine' cases and that John Henry Miller did not know any of the Jurors but suggested that his wife's uncle, William Staley or Bill Staley, who lived in Marianna, Florida, might know some of the Jurors and prove helpful in 'canvassing' their attitude or 'feeling their pulse' and that they accordingly contacted Staley with the request that he assist them in this endeavor and that he did not at any time suggest to Staley that he offer any Juror any money for the purpose of exerting any influence on the Jury which would ultimately be selected to try his brothers."

his own (Staley's) statement which the defendant claims was uncorroborated and in fact refuted by testimony offered by the Government.[3]

■■ We are not unmindful of the rule that testimony of an accomplice should be received with great caution. In this case, the trial court carefully and cautiously instructed the jury and left to the jury, the final decision as to the facts. The pertinent portion of the Court's charge is as follows:

"Now, the Court charges you with reference to the testimony of Mr. Staley, Bill Staley, the witness in the case, that if the jury finds his testimony credible and worthy of belief, that you are given a note of caution under the law that such testimony of one is generally referred to as an accomplice. And the government in this case relies in part for a conviction upon this testimony of William Staley. An accomplice is one who participates in the commission of a crime as an aider or abetter or one who aids or abets, counsels or assists in planning its commission. You are instructed that an accomplice in a crime is a competent witness against the sole perpetrator of the crime and if the evidence should be considered by the jury, even though uncorroborated, and given such weight as the jury believes it is entitled, the evidence, the uncorroborated evidence of the accomplice alone would be sufficient to support a verdict of guilty in this jurisdiction, but such testimony, of such accomplice, must be received by you with great caution and you should closely scrutinize such testimony as just stated and receive it with that degree of caution.

"Now, once again in regard to that matter, the final standard as to whether or not you believe beyond a reasonable doubt what the truth to be with reference to these statements that the individual witnesses have made; that is the believability and the credibility of these witnesses. The Court instructs you in determining the credibility of witnesses you may properly take into consideration the manner of the witness on the witness stand, their interest in the outcome of the case, if any appears to be, their intelligence as shown from the evidence, their candor in relating to you the details about which they are testifying about, the time the thing happened and the time they were on the stand, and generally as reasonable prudent men judge others in the every day affair of human life. Those are the standards that you would judge and weigh in your province, as jurors, the credibility or the believability of individual witnesses in the case."

The charge of the trial court fully met the requirements of the rule which is concisely stated by this Court in Phelps v. United States, 5th Cir., 1958, 252 F.2d 49, 52, as follows:

"A skeptical approach to accomplice testimony is a mark of the fair administration of justice."

But the defendant urgently insists that Staley was not his accomplice and that the only evidence to establish such relationship was Staley's own testimony. The trial court admitted Staley's testimony on the theory that he was Ward's agent. It may be true that an agent cannot assert that he is such agent as a matter of law. In this case however,

3. "At the outset of the Appellant's argument on this question or point it should be stated that Appellant is well aware that as a general proposition of law a Jury is entitled to receive testimony concerning statements made by an accomplice although such statements were not made in the presence of the defendant. It is the Appellant's contention that the party making the challenged statement to a third party was not his accomplice and that the only evidence tending to establish such party's character as an accomplice was the party's statement uncorroborated and in fact refuted by a witness for the Government."

Staley testified to facts without objection from the defendant, from which the jury could easily conclude that Staley had been employed by the Defendant Ward. The defendant does not deny that he traveled some distance to Marianna in the company of Miller for the purpose of obtaining the assistance of Staley; that he, Staley and Miller conversed at some length about contacting the prospective jurors; that he paid Staley $10.00 for his trouble and he stated further that certain information would be worth $100.00. He also confirmed the arrangement to have Staley report to him through Miller. We quote from Ward's testimony:

"I gave Mr. Staley ten dollars. He said he didn't want it and I told him No, that I wanted to give him something for his time because I would like for him to take up some of his time to see if he could find out anything about them. I gave ten dollars then. I told him it would be worth a hundred dollars to find out something about them, if I could know something about them."

Further, with respect to Ward's dealing with Staley, the defendant testified as follows:

"A. He said he knew Mr. Morse I believe.

"Q. What did he say about Mr. Morse? A. He said he just didn't know, that he would see. He didn't give me no answer at that time.

"Q. He said he would go and see Mr. Morse and see whether he was against moonshining or not? A. He said he would contact several of them.

"Q. Did he say that he would call you back after he had contacted them? A. No, sir, he was to contact Mr. Miller.

"Q. And was Mr. Miller to contact you after this? A. He would let me know.

"Q. He would let you know? A. Yes, sir.

"Q. Did he let you know? A. Yes, sir, uh huh.

"Q. How many days later did he let you know, do you recall? A. I believe that he let me know the next day. I believe it was the next day, yes, sir I believe that he said that Mr. Staley called him the night before.

"The Court:

"He would let you know what? A. That Mr. Staley said that he could not do any good. He did do what he could."

The trial court permitted the jury to decide whether Staley was an accomplice of the defendant after hearing all the facts. They decided he was. We agree with their finding. In Phelps v. United States, 5th Cir., 252 F.2d 49 this Court had a similar question before it, but the facts in the instant case are much clearer on the question of whether Staley was an accomplice. In the cited case the Court held as follows:

"We disagree with the trial judge. If a decision had to be made, as a matter of law, as to whether Grace Moss was an accomplice, a majority of the panel would hold that she was an accomplice. We are unanimously of the opinion, however, that the Court erred, in the circumstances of this case, in deciding the question himself rather than in submitting it to the jury. The evidence raises a reasonable doubt as to whether Grace Moss was an accessory, an active participant with Phelps, or, indeed, the real culprit."

One should not be permitted to seek out and choose another to assist him in the commission of an act; to contact such person and explain the duties to be performed; to make arrangements for such person to report on the performance of the duties assigned and requested; to make payment for his trouble and then be heard to complain that such person testified against him, or to deny the arrangements so made. Based upon the

testimony of all witnesses who appeared, there was ample testimony to support the conclusion that Staley was carrying out instructions and directions given to him by the defendant when Staley contacted Morse and conversed with him.

■ We are firm to the conclusion therefore that the testimony of Staley, even if not corroborated (and we believe it was), is admissible against the Defendant Ward. We quote from the opinion of Judge Learned Hand in the case of United States v. Olweiss, 2 Cir., 138 F.2d 798, 800:

> "The notion that the competency of the declarations of a confederate is confined to prosecutions for conspiracy has not the slightest basis; their admission does not depend upon the indictment, but is merely an incident of the general principle of agency that the acts of any agent, within the scope of his authority, are competent against his principal."

See also the case of Colt v. United States, 5 Cir., 160 F.2d 650, 651 from which we lift the following statement:

> "A coconspirator, although an accomplice whose testimony is uncorroborated, is a competent witness against his coconspirator, *not only as to the existence of the conspiracy,* but as to the participation of his coconspirator therein." (Emphasis supplied.)

One of the chief limitations upon the testimony of an accomplice is the rule that such testimony should be scrutinized carefully. Such scrutiny does not go to the competency of the testimony, but to its credibility. United States v. Reina et al., 2 Cir., 242 F.2d 302; McQuaid v. United States, 91 U.S.App.D.C. 229, 198 F.2d 987; McClanahan v. United States, 5th Cir., 1956, 230 F.2d 919; Underhill's Criminal Evidence 4th Edition 246, Sec. 153.

Aside from the theory of agency or the rules applicable to accomplices, the Government contends that the testimony of Morse was admissible as a verbal act which act was the specific act at issue. There is authority for the contention that one of the exceptions to the hearsay rule is generally extended to include such testimony. Staley's conversation with Morse was actually a part of the transaction under investigation, interwoven with the violation charged. In the case of Carantzas v. Iowa Mutual Insurance Company, 5 Cir., 1956, 235 F.2d 193, 196, this Court had under consideration extra judicial utterances, "where the act or statement is the very fact in issue". The following from 3 Jones Commentaries on Evidence, 2nd Ed. 2191 Sec. 1195 was quoted with approval:

> "And where, as in the second class, the act or statement is the very fact in issue, direct testimony is * * * first hand testimony to the issue and no person's credibility is involved but the witness."

See also Safeway Stores, Inc. v. Combs, 5 Cir., 1960, 273 F.2d 295; United States v. Gavagan, 5 Cir. 1960, 280 F.2d 319; 6 Wigmore on Evidence, 177–205, Sec. 1766–1778; 13 A.L.R.2d 1405; 20 Am.Jur. 557, Sec. 664; and 44 Words and Phrases, Verbal Acts, p. 126.

It appears therefore that the testimony of which the defendant complains was also admissible as a verbal act.

In his brief, the Appellant dwells at length on conflicts in the testimony. Admittedly the Witness Miller was vague, indefinite and uncertain in some of his testimony, but in other critical respects he was clear and positive. The chief conflict between the defendant's version of the facts and the witnesses who appeared against him is the question of whether the defendant authorized and directed Staley to make the offer of money to Morse. After hearing all the evidence, the jury resolved this issue against the defendant. There was ample substantial evidence to support the jury's conclusion. The details involved in the commission of most crimes are not usually reconstructed with exact precision. Indeed some reasonable variance in the versions of witnesses as to what actually

happened tends to strengthen rather than weaken the probative force of their testimony. Exact agreement on every "jot and tittle" may tend to arouse suspicion.

The crime involved here is necessarily one of secrecy and indirection. Indeed the statute under which the defendant was prosecuted recognizes this fact in the language employed in the statute, "whoever, directly or indirectly, gives or offers any money or thing of value * * *". Perpetrators of such crimes do not announce their plans from the housetop. One associate sees another, who in turn may suggest still another contact.[4]

Having reached the conclusions herein set forth, it is obvious that the trial court did not commit error in denying the defendant's motion for judgment of acquittal, or in refusing to grant defendant's motion for a new trial.

■■ Whether a trial court has committed reversible error depends upon the facts and circumstances of each case and the conduct of the trial as a whole. In weighing the fairness of the conduct of the trial court in this case, we are impressed with the fact that he showed remarkable and commendable consideration for the defendant. In the first place, he granted a change of venue. He gave a cautious charge as to the rules which should guide the jury in considering the testimony of Staley. Further, the record discloses that after the court had charged the jury, he excused the jury and asked counsel for the Government and the defendant to make comments. There was a discussion off the record and the jury was brought back into the court and the following instructions were given by the trial judge:

"I merely want to comment here and to charge you, that where a person requests another person that he talk to a prospective juror, if that is for the purpose and with the intent only of determining his general philosophy as to a general class of cases, as is contended here by the defendant, specifically in this case as to their general philosophy on the subject of moonshine cases, where such a situation prevails that that is not unlawful for one to so inquire as to their information of the prospective juror, but the Court charges you, here, that where if the testimony you find in this case, if you so find, by the standards I have given you, that the purpose of this conversation was to indirectly offer money to in an attempt to influence the petit juror, then, that of course, is the very specific thing that is prohibited by law, and which as alleged in this particular indictment and the Court so charges you in that regard."

After the foregoing charge, the Court requested further comments from counsel. Both counsel for the defendant and the Government affirmatively stated that they had no further comments.

■ We are not critical of the distinguished trial judge for the last quoted portion of his charge. No doubt, he was motivated by the desire to show every proper consideration to protect the rights and the liberty of the defendant. The Court was fixing standards by which the defendant was to be judged under a criminal statute. He was not fixing standards of ethical conduct. Such an attitude on the part of a trial court insures full protection of the rights of the accused. We are constrained to say however, that the standards by which the defendant was judged are somewhat lower than our concept of the proper course of action for litigants or other interested persons to follow. Litigants or others interested should not be allowed to request another person to talk to prospective jurors with reference to pending cases. Neither can

---

4. See Underhill's Criminal Evidence, 4th Ed. 133, Sec. 717 with reference to bribery: "Because of the secret nature of the crime, and the necessity that there should always be at least two participants, it is both necessary and customary to rely largely on accomplice evidence. When an accomplice is used as a witness, the utmost good faith should be observed in dealing with him."

we approve the idea that friends and kinspeople (or anyone else) should be allowed to *contact* prospective jurors to "ascertain their feelings", or to "canvass" the jury, or "feel their pulse". Such conduct does not comport with our idea of an unhampered jury with which no one has tampered. In order to obtain legitimate information about a jury, direct contact, canvassing and pulse feeling are not necessary or proper. Considering all aspects of this case, we are firmly convinced that the defendant received a fair and impartial trial.

The judgment of the District Court is Affirmed.