Roy Lee DUNN, Appellant,

v.

UNITED STATES of America, Appellee.

No. 20088.

United States Court of Appeals Fifth Circuit.

May 22, 1963.

Rehearing Denied June 26, 1963.

Douglass D. Hearne, Hume Cofer, John D. Cofer, Austin, Tex., Cofer, Cofer & Hearne, Austin, Tex., for appellant.

Ernest Morgan, U. S. Atty., Andrew L. Jefferson, Jr., Asst. U. S. Atty., San Antonio, Tex., for appellee.

Before RIVES and GEWIN, Circuit Judges, and SHEEHY, District Judge.

RIVES, Circuit Judge.

This appeal is from a judgment of conviction based on an indictment drawn under the Mann Act, 18 U.S.C.A. § 2421, which charged:

"That on or about February 15, 1961, ROY LEE DUNN knowingly and unlawfully transported and caused to be transported in interstate commerce a woman and girl, to-wit: Lynn L. Willis, from the State of Oklahoma to the Austin Division of the Western District of Texas, for the purpose of prostitution, debauchery and other immoral purposes."

Only two questions need be answered: 1) whether the district court erred in denying Dunn's motion for a judgment of acquittal; and 2) whether the district court committed reversible error in failing to caution the jury as to "accomplice" testimony.

At Caldwell, Burleson County, Texas, during January and February of 1961, Dunn operated the Tradewinds Club and, on the other side of the road, the "Big House," a house of prostitution. The Club specialized in mixed drinks, gambling, and strip tease; the "Big House" featured mixed drinks and the companionship of the prostitutes in residence there. As fees were collected by the prostitutes from customers, they were given to the Negro maid who kept a record of each girl's earnings. The girls were paid on a weekly basis by Dunn who kept fifty per cent of the proceeds as his commission.

Lynn Willis was employed by Dunn as a prostitute and resided at the "Big House." Raymond Medina was employed by Dunn and worked in and around both establishments. His principal duties, however, were centered at the Tradewinds Club. Rodolfo (Rudy) Medina, brother of Raymond, was employed at the Tradewinds Club.

On or about February 10, 1961, Lynn Willis was taken, against her will, from the "Big House" by a panderer named Thomas Dominic Butler in the company of a man known to her only as "Billy"

and a woman whose name was Dolores Reeves. Butler and his companions took Lynn Willis to Galveston, Texas, where they met another panderer named William Edward Rafferty. Butler and Rafferty then took her to Lawton, Oklahoma, where she worked as a prostitute. From Lawton, she was taken to the Shaffer Hotel, Altus, Oklahoma. While she was at the Shaffer Hotel, she also plied her trade.

On or about February 14, 1961, Lynn Willis made three telephone calls in an effort to contact Dunn or Bud Simmons, the bartender at the "Big House." The first call was made to the Tradewinds Club. Rudy Medina answered the phone. This call was not completed because neither Dunn nor Bud Simmons happened to be at the Club. The second call was attempted shortly thereafter. This call was also placed to the Club. Again she failed to reach Dunn or Bud Simmons. Instead, Lynn Willis talked to Raymond Medina who had answered the telephone. She told Raymond Medina that she was in Altus, Oklahoma, that she was going to catch a bus for Dallas, Texas, and asked Medina to have Dunn send somebody to meet her there. The third call was made to the "Big House."

As to this third call, Lynn Willis testified:

"A. Well, I placed the third call and I asked for Roy Dunn or Bud Simmons.

"Q. All right. Now, you placed this call also from Altus, Oklahoma?

"A. Yes, sir.

"Q. And where was it placed to?

"A. I believe it was placed to the 'Big House.'

"Q. And that's the place where you had been living?

"A. Yes, the house of prostitution.

"Q. All right. Now, tell us about that call?

"A. And somebody took the phone up, I don't know who it was; I didn't much care at the time.

"Q. Were you excited?

"A. Yes, I was. It was trying to get away from these pimps.

"Q. All right. What did you say in that telephone call?

"A. I told them that I could not catch a bus until 7:00 o'clock in the morning, and then I told him that I was in Altus, Oklahoma, in the Shaffer Hotel, and I gave him the room number and told him that I would be ready.

"Q. Now, do you know who you were talking to?

"A. No, I don't."

On further examination by both the prosecution and the defense, Lynn Willis stuck to her testimony that she did not know to whom she talked on this third telephone call. It is crucial that the only testimony that Dunn was the recipient of this third telephone call came from Raymond Medina, who admitted that he actually transported Lynn Willis from Altus, Oklahoma, back to the house of prostitution in Caldwell, Texas.

Raymond Medina testified that, on the third call, he answered the telephone when it rang at the "Big House" and handed the receiver to Dunn; that Dunn conversed with the calling party and afterwards handed Raymond Medina a piece of paper (which had been destroyed) bearing the following information: Pam Watson (Lynn Willis' trade name), Shaffer Hotel, Altus, Oklahoma; that Dunn then instructed Raymond Medina to go and get the prostitute.

The evidence is without dispute that, following this third telephone call, Raymond Medina borrowed an automobile from Vivian Accardo, the "dice girl" and sometimes "black jack" dealer at the Tradewinds Club; drove to Altus, Oklahoma; picked up the prostitute, and returned her to the "Big House" where she resumed the practice of her profession. That Dunn was the recipient of the third telephone call which resulted in the transportation of Lynn Willis from Oklahoma to Texas was a necessary link in the chain

of evidence going to establish Dunn's guilt. Whether that link was proved or not depended on whether the jury believed the testimony of Raymond Medina, who was either the principal guilty party or an accomplice of Dunn.[1]

The appellant recognizes the well-established rule that in the federal courts a conviction can be sustained on the uncorroborated evidence of an accomplice if the jury is convinced of the defendant's guilt beyond a reasonable doubt.[2] Appellant's insistence on error in the denial of his motion for judgment of acquittal is based upon the contention that the evidence failed to establish the necessary guilty intent and purpose for the interstate transportation of the woman. He points out that Lynn Willis made the telephone calls that initiated her return trip from Oklahoma to Texas, and insists that the dominant purpose of that trip was her escape from Butler and Rafferty.

His principal reliance is on the case of Mortensen v. United States, 1944, 322 U.S. 369, 64 S.Ct. 1037, 88 L.Ed. 1331. In that case, a man and wife who operated a house of prostitution had taken two of the girls with them on a trip planned and consummated purely as a vacation. Upon their return, the girls resumed prostitution. The Court held that a conviction of the man and his wife under the Mann Act for the interstate transportation of the girls on the return trip could not be sustained, and said in part:

"The fact that the two girls actually resumed their immoral practices after their return to Grand Island does not, standing alone, operate to inject a retroactive illegal purpose into the return trip to Grand Island. Nor does it justify an arbitrary splitting of the round trip into two parts so as to permit an inference that the purpose of the drive to Salt Lake City was innocent while the purpose of the homeward journey to Grand Island was criminal. The return journey under the circumstances of this case cannot be considered apart from its integral relation with the innocent round trip as a whole. There is no evidence of any change in the purpose of the trip during its course. If innocent when it began it remained so until it ended." 322 U.S. at 375, 64 S.Ct. at 1041, 88 L.Ed. 1331.

The Mortensen case was a five-to-four decision contrary to the rulings of the two lower courts. Its doctrine should not be extended to cover this case where the purpose of the return trip was separate from that of the outgoing trip, especially in the light of Raymond Medina's testimony that, "I knew I was going to get her back, and any girl that was brought back to the house of prostitution at Burleson County came there for one purpose, and the purpose was to work as a prostitute." [3]

We conclude that the district court properly denied Dunn's motion for a judgment of acquittal.

The district court gave to the jury the general instructions as to the credibility

1. Indeed, the district judge when he came to sentence Dunn, commented:
"* * * We are also taking into consideration the fact that this trial took some three days to conclude, and that the testimony in the trial was quite conflicting and confusing. That the defendant was convicted on the uncorroborated testimony of an accomplice. The Court feels that the witness Medina who was offered by the Government is not a witness that you would look upon with too much credibility, yet that was a matter for the jury to pass upon, and they believed the witness insofar as he established the elements of the offense relative to causing the transportation."

2. Caminetti v. United States, 1917, 242 U.S. 470, 495, 37 S.Ct. 192, 61 L.Ed. 442; Nelva v. United States, 8 Cir., 1954, 212 F.2d 115, 120, 121, and cases there cited.

3. As well stated in Nunnally v. United States, 5 Cir., 1961, 291 F.2d 205, 208: "Of course, prostitution or such immoral purpose need not be the sole motive for the interstate trip. It is sufficient if it is one of the principal purposes."

to be accorded the witnesses, substantially in the language quoted in Joseph v. United States, 5 Cir., 1960, 286 F.2d 468, 469. Dunn's attorneys objected and called attention that, "there can be a conviction on accomplice testimony, but that particularly in this case, where the accomplices are the persons who actually committed the act, and the government relies on the fact that this defendant caused them to do that, that it is extremely important that the effect and the character and the weight of accomplice testimony be commented upon."

We quote some further amplification of the objection.

"MR. HUME COFER: * * * The thing I wanted to ask the Court now is, the Court does understand that we do request a charge concerning accomplice testimony, and, of course, the Court's ruling on that, is not, I'm sure, based upon the fact we did not write one out, because the charge on accomplice testimony is a form charge which I'm sure is easily available. If there is any question about it, we would like permission to write one out now and request—(interrupted)

"MR. JOHN COFER: That's all right, son, because we have got a sufficient objection on it. I have reviewed the charges, Your Honor, and read the testimony, but I never saw one before where the case depended upon accomplice testimony that didn't have a charge on accomplice in it, so—(interrupted)

\* \* \* \* \* \*

"MR. JOHN COFER: I have made an objection, Your Honor, the fact that there was no charge on accomplice in the Court's Charge."

The court overruled the objection and declined to charge further.

■ When the court fails to instruct on some question, the safer practice under Rule 30, F.R.Crim.P., is for counsel to submit a written request for instructions. However, oral requests are sufficient, if the omission has not been foreseen and if the court is clearly informed of the point involved.[4]

In Joseph v. United States, 5 Cir., 1960, 286 F.2d 468, 469, this Court collected many of the cases on cautionary instructions as to "accomplice" testimony, and commented that the better practice is to give a cautionary instruction,[5] but that failure so to do is often not reversible error. Again in Phelps v. United States, 5 Cir., 1958, 252 F.2d 49, 53, Judge Wisdom, after commenting on the advisability of "including a caution against placing too much reliance upon the testimony of an accomplice," said: "Whether the error is reversible error depends on the circumstance of each case and the conduct of the trial as a whole." See also, United States v. Persico, 2 Cir., 1962, 305 F.2d 534, 536.

■ We think that the circumstances of the present case clearly required the giving of a cautionary instruction as to the testimony of the witness Raymond Medina. Failure to give the instruction may well have been injurious to the defendant. Late Friday evening the jury had reported that they were hopelessly deadlocked. It was not until after about two more hours of deliberation on Saturday morning that the jury returned a verdict of guilty.

The judgment is therefore reversed and the cause remanded.

Reversed and remanded.

---

4. Sharp v. Root, 5 Cir., 1957, 240 F.2d 519, 522, n. 3; see also, Bland v. United States, 5 Cir., 1962, 299 F.2d 105, 108; 5 Moore's Federal Practice, 2d ed., paragraph 51.03, p. 2502; 2 B Barron and Holtzoff, Federal Practice and Procedure, Rules Edition, § 1102, pp. 441, 442.

5. A good example of such a cautionary instruction is contained in Ward v. United States, 5 Cir., 1961, 296 F.2d 898, 901.