William Hunter WILSON, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. 1140.

Supreme Court of Alaska.

July 20, 1970.

Brian J. Brundin, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for appellant.

G. Kent Edwards, Atty. Gen., Juneau, and Kenneth O. Jarvi, Asst. Dist. Atty., Anchorage, for appellee.

Before BONEY, C. J., and DIMOND, RABINOWITZ and CONNOR, JJ.

BONEY, Chief Justice.

On January 21, 1969, William Hunter Wilson, Jr., was indicted on charges of burglary in a dwelling and assault with a

dangerous weapon.[1] Jury trial was commenced on March 18, 1969, and on March 19, verdicts were returned finding Wilson not guilty of burglary and guilty of the assault. Wilson now appeals his conviction of assault with a dangerous weapon.

Two conflicting versions of the facts leading to Wilson's arrest were related at trial. Richard Tast testified at the trial that on January 15, 1969, at 3:00 a. m., he had been asleep on the living room couch of his home in Anchorage when he was awakened by a noise. Upon awakening, Tast saw an intruder, Wilson, crouched on the living room floor behind a table. Tast asked Wilson to identify himself, but Wilson, remaining silent, started to move toward Tast. A struggle ensued. Tast testified that in the course of the struggle he became aware that Wilson was in possession of a knife, that he disarmed Wilson and managed to subdue him. After Wilson was subdued, Tast held him at gun point and summoned the police. While awaiting the arrival of police, Wilson told Tast that he had come to Tast's home on behalf of his sister, who had recently been accosted; Wilson explained that a friend had indicated Tast's home as the residence of his sister's assailant. However, when Wilson got a close look at Tast's face in the light, he stated that he was mistaken and that Tast was not the same person who had attacked his sister.

A second version of the incident was given by Wilson to an Anchorage police officer in an interview conducted shortly after his arrest. Wilson did not take the stand at his own trial, but his version of the story was introduced through the testimony of the police officer who had questioned Wilson, and was also corroborated by a police report written several hours after the interview. Wilson told the police that the night before his arrest he had been attacked in the Malemute Bar by a person known to him only as Floyd. Floyd attacked Wilson with a knife, claiming that Wilson had raped either Floyd's sister or wife (Wilson could not remember which one he had been accused of raping). Wilson was able to escape from Floyd, whereupon he ran into another bar and called the police to report the incident; however, according to Wilson, the police never showed up.

Wilson stated that he made inquiries about the identity of his assailant and proceeded to an address that was given to him. He also stated that he was at that time in possession of a hunting knife belonging to a friend. Wilson claimed that when he arrived at the house where his assailant allegedly resided, he knocked at the back door and a male voice told him to enter. Upon entering the residence, Wilson allegedly tripped and fell over a step separating the hallway from the living room; as he fell to the floor the knife which he was carrying slipped out of its sheath, and he reached to pick it up. According to Wilson, it was at this time that Tast jumped from the couch and

1. The charges were made in a two count Grand Jury indictment. Count I of the indictment alleged:

   That on or about the 15th day of January, 1969, at or near Anchorage, in the Third Judicial District, State of Alaska, William Hunter Wilson, Jr. did wilfully, unlawfully and feloniously during the nighttime break and enter a dwelling house, to-wit: the residence of Richard Russell Tast located at 837 N Street, Anchorage, Alaska where Richard Russell Tast was sleeping, said breaking and entering being with intent to steal therein.

   All of which is contrary to and in violation of AS 11.20.080 and against the peace and dignity of the State of Alaska.

   Count II alleged:

   That on or about the 15th day of January, 1969 * * * William Hunter Wilson, Jr. being then and there armed with a dangerous weapon, to-wit: a hunting knife, did wilfully, unlawfully and feloniously assault one Richard Russell Tast by cutting said Richard Russell Tast on the hand and forearm.

   All of which is contrary to and in violation of AS 11.15.220 and against the peace and dignity of the State of Alaska.

attacked him. Wilson stated that he repeatedly shouted at Tast to allow him to put down the knife, but Tast gave him no opportunity to do so. Finally, according to Wilson, he was able to get away from Tast momentarily and throw the knife away into the kitchen, thus ending the struggle.

On appeal, Wilson contends that the trial court committed error in refusing to grant defense counsel's request for an instruction on self-defense. Apparently defense counsel first raised the issue of self-defense in chambers at some time prior to closing arguments, when a request was made to the court for a "standard" instruction to the jury on self-defense. The trial court denied the requested instruction, ruling that the request was improper because defense counsel had not raised the issue of self-defense in his opening statement,[2] and because defense counsel had failed to submit the requested instruction in writing.[3]

■ It is quite clear that if evidence had not been presented to show that Wilson knocked at Tast's door and was asked to enter, Wilson's claim of self-defense could not be sustained.[4] Although it is clear that neither an officer nor a private person may employ more than necessary force in

making an arrest,[5] there is no indication here that Tast used any excessive or unnecessary force to restrain Wilson.

■ Thus, assuming for the present that the jury did not believe that Wilson had been asked to enter the house, we are faced with a situation where Wilson entered Tast's home at 3:00 a. m., armed with a knife, in search of a man who had previously assaulted him with a knife. Tast was awakened by Wilson and was able to subdue him although he was, himself, unarmed. Surely we could not say that the use of bare hands against an armed intruder constitutes unnecessary force; absent some showing of excessive force Wilson would have no right to resist Tast's efforts to restrain him. Our conclusion is consonant with recent decisions of this Court. In Miller v. State, 462 P.2d 421, 426 (Alaska 1969) we stated:

> The control of man's destructive and aggressive impulses is one of the great unsolved problems of our society. Our rules of law should discourage the unnecessary use of physical force between man and man. Any rule which promotes rather than inhibits violence should be re-examined.

In accordance with this reasoning, we held in Miller that a person had no right to use

2. The court below relied upon Crim.R. 27 (a) (2) in ruling that Wilson could not properly request an instruction on self-defense after having failed to raise the issue in opening statement:

The defendant, or his counsel, may then state his defense, and may briefly state the evidence he expects to offer in support of it; provided, that after the state has produced its evidence and presented its case in chief, the defendant, or his counsel, if he intends to produce evidence, must then state his defense, and may briefly state the evidence he expects to offer in support of it.

3. In ruling that the defense counsel's request for an instruction on self-defense was improper because it was not submitted in writing, the trial court apparently relied on Crim.R. 30(a), which provides, in relevant part:

At the close of the evidence or at such earlier time during the trial as

the court reasonably directs, any party may file written requests that the court instruct the jury on the law as set forth in the requests. At the same time copies of such requests shall be furnished to adverse parties. * * *

4. AS 12.25.030 provides:

A private person or a peace officer without a warrant may arrest a person
(1) for a crime committed or attempted in his presence;
(2) when the person has committed a felony, although not in his presence;
(3) when a felony has in fact been committed, and he has reasonable cause for believing the person to have committed it.

5. AS 12.25.070 provides:

No peace officer or private person may subject a person arrested to greater restraint than is necessary and proper for his arrest and detention.

force to resist a peaceful, but unlawful arrest made by a police officer.

In Gray v. State, 463 P.2d 897, 909 (Alaska 1970), we held that in certain limited factual circumstances the right to claim self-defense may even be forfeited:

> [A] person who commits an armed robbery forfeits his right to claim as a defense the necessity to protect himself against the use of excessive force by either the intended victim of the robbery or by any person intervening to prevent the crime or to apprehend the criminal, absent a factual showing that at the time the violence occurred, the dangerous situation created by the armed robbery no longer existed.

We need not extend the narrow holding in *Gray* to the facts of the present case, since it is sufficient to observe that here there was no evidence of excessive force.

■ If it is assumed, however, that the jury may have been disposed to believe that Wilson had knocked on the door of Tast's home, and that he had in fact been asked to enter, the situation changes somewhat. Under this theory, Wilson would no longer have been an intruder, and, arguably, he would have been entitled to defend himself had Tast initiated the altercation. But the circumstances under which the instruction on self-defense was requested below make it unnecessary for us to speculate as to what kind of self-defense instruction Wilson might have been entitled to.

■ Wilson's counsel requested only that a "standard" instruction on self-defense be given. Such an instruction would have been too broad and therefore inappropriate since, as has already been pointed out, Wilson could have properly claimed self-defense only on the theory that he had entered Tast's home lawfully. In Cherry v. Stedman, 259 F.2d 774, 777–778 (8th Cir. 1958), it was held:

> A party cannot claim error in the refusal to give a requested instruction

which is not entirely correct, or which it is not possible to give without qualification, or which is so framed as to be capable of being misunderstood. (Citations omitted.)

We think this statement is applicable to the instant case.[6] Without delving into what, exactly, a "standard" instruction on self-defense would comprise, it is safe to venture that such an instruction would not have been sufficient to alert the jury to the fact that Wilson's right to claim self-defense was entirely contingent upon the jury's belief that he had entered Tast's home lawfully, after having knocked and after being asked to enter. Similarly, such a "standard" instruction could not have fairly apprised the jury of Tast's right to restrain and arrest intruders in his own home. For these reasons, the requested instruction would not have been entirely appropriate, and the trial court correctly rejected it.

■ The question arises independently whether the court should have formulated, on its own motion, a sufficiently narrow instruction on the issue of self-defense.

In Pepsi Cola Bottling Co. v. Superior Burner Service Co., 427 P.2d 833 (Alaska 1967), we concluded that despite a party's failure to request a correct instruction, the court was nonetheless bound under certain circumstances to act on its own in formulating an appropriate charge. In *Pepsi Cola,* we stated:

> Assuming appellant's requested limiting instruction was erroneous, the trial court correctly refused to give it. But this is not the end of our inquiry. Numerous authorities have concluded that if the defective, or erroneous, requested instruction directs the court's attention to an issue which the jury has not been instructed upon but which is necessary to enable the jury to intelligently determine the case, 'the court's error in failing to charge may not be excused by technical

6. *See* United States v. Lease, 346 F.2d 696, 702 (2d Cir. 1965); *see also* State v.

Twitchell, 61 Wash.2d 403, 378 P.2d 444 (Wash.1963).

defects in a request to charge.' (Citation omitted.) 427 P.2d at 833.

However, we think that the instant case is distinguishable upon its facts from the *Pepsi Cola* case. The *Pepsi Cola* case dealt with an instruction limiting the purposes for which certain evidence could be considered by the jury. There, counsel had repeatedly requested both during the trial and at the time of submitting proposed jury instructions, that an instruction be given. The theory upon which the instruction was offered was made clear to the court; the proposed instruction was reduced to writing and opposing counsel had ample opportunity to object thereto. Moreover, the flaw in the proposed instruction was one that could be characterized as technical.

Here, on the other hand, the request for an instruction on self-defense could hardly be classed as technical in nature. The area of law surrounding the issue of self-defense is complex and permeated with countervailing considerations of policy. *See,* for example, our discussion of self-defense in the *Gray* case, cited *supra.* Where, as here, the availability of the defense depends upon the assertion of one narrow view of the facts involved, it is particularly important that that view be made known to the court passing on the appropriateness of the defense, in order that a proper charge might be formulated. Yet a study of the proceedings below indicates that no effort whatsoever was made in this regard by counsel for the defense.

Following presentation of the prosecution's case-in-chief, defense counsel made a brief opening statement. No mention was made of the issue of self-defense at that time. The only evidence produced by the defense consisted of testimony of a witness to the incident in the Malemute Bar and the introduction into evidence of Wilson's jacket, which had been found hanging in the anteroom at Tast's residence. This evidence was apparently introduced to overcome the burglary charge in the indictment by showing that Wilson did not enter Tast's home with the intent to steal.

Thus, the only evidence relevant to self-defense in this case was introduced by the prosecution's own witnesses, and counsel for the defense made no effort to focus on the issue of self-defense through argument, through the calling of witnesses, or through the introduction of evidence. The first mention of self-defense came when defense counsel orally requested an instruction. It must be noted that defense counsel's request was vague, overly broad, and that at this late point, counsel did not even take the trouble to reduce his request to writing as required by Criminal Rule 30(a). Under these conditions, we feel that it would be expecting too much of a trial court to require it to speculate on various possible theories of defense in formulating instructions.[7] We would, in effect, be imposing upon the trial courts a duty to ferret out and instruct upon any number of different lines of defense which are not even seriously contended or pursued by counsel at trial. The imposition of such a duty would effectively force trial judges to become advocates rather than arbiters, and would thus weigh heavily against the adversary structure of our system of justice.

Appellant's conviction is affirmed.

---

7. Two federal cases, Hull v. United States, 324 F.2d 817 (5th Cir. 1963), and Dunn v. United States, 318 F.2d 89 (5th Cir. 1963), have been cited in the dissenting opinion to support the view that an oral request for an instruction will suffice if a court is clearly informed of the point involved. We do not dispute the holding of these cases, and do not intimate that an oral request for a jury instruction must in all, or even in most cases be considered invalid. Our holding today addresses itself only to the narrow circumstances of the instant case, under which we have concluded that the oral request was not sufficient to clearly inform the trial court of the point at issue, as required by the Hull and Dunn cases.

**638**

RABINOWITZ, Justice (dissenting).

I would reverse the judgment and commitment in this case because of the trial court's refusal to instruct the jury on the issue of self defense. In my view, neither of the grounds given by the trial judge as the basis for his ruling are correct. There is no requirement that counsel for the accused must raise all defenses in his opening statement to the jury or suffer the risk of preclusion. This is particularly apparent where the evidentiary basis of the defense originates in the government's own case in chief.[1] Nor does Criminal Rule 30(a) require that all requested instructions must be in writing. Criminal Rule 30(a) is permissive in form. Federal precedent construing the federal counterpart to Alaska Criminal Rule 30(a) has held oral requests sufficient if the court is clearly informed of the point involved. Hull v. United States, 324 F.2d 817, 824 (5th Cir. 1963); Dunn v. United States, 318 F.2d 89, 93 (5th Cir. 1963).

It is established that an accused is entitled to a specific instruction on his theory of the case if there is evidence to support it and a proper request for such an instruction is made.[2] The majority's reliance on the *Stedman*[3] case constitutes a clear warning to defense counsel that unless a requested instruction is "entirely correct"

the trial judge is under no obligation to instruct the jury on the subject matter of the imperfect request. Such an overly technical approach is inconsistent with Pepsi Cola Bottling Company v. Superior Burner Service Company, 427 P.2d 833, 837 (Alaska 1967). In that case, which involved civil litigation, we said:

Numerous authorities have concluded that if the defective, or erroneous, requested instruction directs the court's attention to an issue which the jury has not been instructed upon but which is necessary to enable the jury to intelligently determine the case, 'the court's error in failing to charge may not be excused by technical defects in a request to charge.'[4] (footnote omitted)

In the case at bar, counsel for the accused made a timely, although oral, request to the trial court for an instruction on self defense. Since there was a sufficient evidentiary basis for this request, I am of the view that the trial court was under a duty to charge the jury on this essential facet of the case.[5] The weakness or implausibility of such evidence is not a relevant consideration.[6] Nor do I consider it an inordinate burdening of the trial court to require it to have instructed on self defense in the circumstances of this case.

1. Under Alaska's procedures, counsel for defense is given the option of deferring opening statement until after the government has produced its evidence and presented its case in chief. Criminal Rule 27(a) (2).

2. In Brooke v. United States, 128 U.S.App. D.C. 19, 385 F.2d 279, 284 (1967) (footnote omitted). the court said:
   Where there is evidentiary support for special facts sustaining a rational defensive theory, to which the court's attention is specifically directed, the defendant is entitled to have the jury charged on that theory. However weak the evidence, however implausible the theory may appear to be, the matter is for the jury's determination.

3. Cherry v. Stedman, 259 F.2d 774, 777–778 (8th Cir. 1958).

4. Civ.R. 51(a), which was construed in *Pepsi Cola Bottling*, is materially similar to Crim.R. 30(a). Civ.R. 51(a) reads in part:
   At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law set forth in the requests.

5. In Griego v. United States, 298 F.2d 845, 849 (10th Cir. 1962) (footnote omitted). the court said:
   This conforms to the general rule that in a criminal case instructions are erroneous if they exclude from jury consideration an affirmative defense as to which evidence has been received.

6. *See* Brooke v. United States, 128 U.S. App.D.C. 19, 385 F.2d 279, 284 (1967).

I find it difficult to perceive how the trial judge is metamorphized into an advocate by requiring him to instruct on self defense in the circumstances of the case at bar. The "adversary structure" of our system of justice could have been maintained by the trial court's granting a recess during which time counsel for the accused could be required to submit in writing a requested instruction of the subject of self defense.