ETHEL LEE PEELE; LEON SMITH AND WIFE, LOIS G. SMITH; BY HER NEXT FRIEND, GEORGE L. CAUSE v. L. E. HARTSELL, T/A HARTSELL MOTOR COMPANY.

(Filed 1 February 1963.)

**1. Actions § 8; Negligence § 2—**

Allegations and evidence that defendant, in the course of performing his contract to move plaintiff's heavy trailer, elected not to pull it backward over hard ground but pulled it forward into marshy ground, where it became stuck, and then pulled it sideways out of the mud, resulting in damage to the trailer, *held* to constitute a cause of action in tort for defendant's failure to use due care not to injure plaintiffs' property in the performance of the contract, and not a cause of action *ex contractu,* the contract merely creating the relationship and circumstances imposing on defendant the duty to use due care not to injure plaintiffs' property.

**2. Pleadings § 4—**

The relief to which plaintiffs are entitled is determined by the evidence and not the conclusions of the pleader nor the prayer for relief.

**3. Negligence § 24a—**

Evidence that defendant's employee, in the performance of defendant's contract to move plaintiffs' heavy trailer, elected to pull the trailer forward over marshy ground where it became stuck, that defendant then ordered his employee to unhook the tractor and leave the trailer, but, upon the *feme* plaintiff's insistence that he perform the contract, defendant directed that the trailer be pulled sideways through the mud, resulting in damage to the trailer, *is held* sufficient to overrule nonsuit on the issue of defendant's negligence, since defendant should have foreseen that damage to the trailer would likely ensue from the method by which he elected to perform the contract.

**4. Trial § 21—**

On motion to nonsuit, plaintiffs' evidence is to be taken as true and all the evidence considered in the light most favorable to plaintiffs, giving them the benefit of every fact and inference of fact pertaining to the issues which may be reasonably deduced from the evidence.

**5. Damages § 12—**

Where the issue is the difference between the market value of plaintiffs' trailer immediately before and immediately after defendant's negligence, testimony as to the value of the trailer three years thereafter when repairs had been attempted and the trailer had been moved several times, *held* incompetent as being too remote.

APPEAL by plaintiffs from *Gambill, J.,* March 12, 1962 Term of RICHMOND.

This is an action to recover for damage done to plaintiffs' house trailer when defendant, pursuant to contract, attempted to move it.

Plaintiffs allege that defendant contracted to move their 1957 trailer from a site on U. S. Highway No. 74 near Rockingham, North Carolina, eighty-two miles to Rock Hill, South Carolina, for a consideration of thirty dollars; "that it was implied in the contract with the defendant that said defendant would use due care in the moving of said trailer to keep from damaging said trailer in the performance of the contract"; the defendant breached the contract by attempting to move the trailer in a circle over soft earth when it could have been pulled backwards over solid ground; that, in the exercise of due diligence, he should have known that it could not be moved in safety over such wet, mushy ground; that as a result it became partially buried in the mud; that then defendant "further failed to use due care and preserve the condition of said house trailer and, in breach of said contract, pulled said trailer out of the mud at an angle" by means of a

wrecker; and that as a result the trailer was twisted, warped, and damaged in the sum of $4,200.00 "by the defendant in the breach of his contract."

The plaintiffs' evidence and admissions in the pleadings tend to show the following facts:

The outside of the trailer involved in this action was aluminum; the inside walls and ceiling were plywood; and the floor was tiled. It was forty-two feet long and eight feet wide. It had four wheels, two on each side about the center of the unit. It contained four rooms and bath, and was completely furnished, including a stove, washer, and refrigerator. On February 12, 1959, defendant contracted with Mrs. Smith one of the plaintiffs, to move it to Rock Hill the next day if the weather were clear. It had been raining for two or three days.

On the morning of February 13, 1959, defendant sent his employee, Ernest Barnes, with a truck called a short dog and especially designed to move mobile units, to take the trailer to South Carolina. The trailer had been unblocked the night before. Barnes hooked the short dog to the hitch on the front of the trailer and then asked Mrs. Smith which way he should go out to the highway with the trailer. She said, "Mr. Barnes, I can't tell you, as long as you are hooked to the trailer, you are responsible for it, and I couldn't say which way." Fairley Ivey, an uncle of Mrs. Smith's, was present at the time. He told Barnes not to pull the trailer through the yard in front of the trailer occupied by Mrs. Smith's mother and parked eight feet from plaintiffs' trailer; that the ground there was too boggy to withstand its weight and he would get stuck. He advised him to back the trailer straight out because that route would be over bedrock to the highway. Barnes looked at the ground and told Ivey that he preferred to go across the yard. When he had gone about twenty feet, the wheels of the trailer became buried in the mud so that he was unable to move it farther. After several unsuccessful efforts, Barnes telephoned the defendant who ordered him to unhook the short dog, leave the trailer where it was, and return to his place of business. When this message was relayed to Mrs. Smith, she immediately telephoned the defendant and told him that if he unhooked from her trailer and left it stuck in the mud he would be sorry; that she wanted it out of the mud that day. Her husband was working in South Carolina; she was in Richmond County with her baby; and her trailer was stuck in the mud, disconnected from utilities. She told Barnes that she did not know what to do and he said he would call Mr. Morse who had a wrecker. He called Morse and inquired what he would charge to pull the trailer out. Morse said the cost would depend on the time involved. He came with the wrecker and, after

disconnecting it from the trailer, pulled the short dog out of the mud. He then hooked a chain from the winch on the back of the wrecker to the side hitch of the trailer but he could not move it. Morse announced that he would not be responsible for anything that happened to the trailer. Mrs. Smith did not expect him to be responsible because she had no contract with him.

The defendant himself came to the scene after Morse arrived, and was present when Morse failed to move the trailer with the wrecker. Defendant parked his automobile on the highway next to the trailer, opened the door, turned around in his seat, and — without getting out of the car — "was telling Mr. Barnes how to get the trailer unstuck, giving him directions on how to get the trailer unstuck to get it out of there." Defendant stayed at the scene about half an hour, and Barnes and Morse got the trailer out before he left. After Morse was unable to move the trailer with the wrecker alone, he and Barnes hooked the truck to the side of the trailer, put boards under the truck wheels, took the chain from the winch on the wrecker and hooked it to the front bumper of defendant's truck and the two vehicles together pulled the trailer sideways through the mud across the yard. Thereafter it took five truckloads of dirt and rock to fill up the holes which were made in the yard.

When the trailer was pulled sideways, at least five inches of the front end dug through the mud. The trailer "cracked and popped," and two jalousied glasses in the door were broken. The plywood boards under the tile in the kitchen buckled, screws pulled through the aluminum siding and the seams at the top of the unit separated. Thereafter the trailer leaked and it was never possible to level it so that the washing machine could be used.

After Morse got the trailer out he told Barnes the bill was fifteen dollars, and Mrs. Smith said she would send the money back. Barnes agreed to stand good for the money until he returned from Rock Hill, and Mrs. Smith's father gave Barnes the money. As soon as the trailer was removed from the mud Barnes took it to Rock Hill with defendant's short dog, and Mrs. Smith paid him the thirty dollars for moving it.

After a year in Rock Hill Mr. Smith was transferred to Camden, fifty-five miles away. They moved the trailer to Camden and, after a time, they moved back to Rock Hill with the trailer. In November 1961 in Charlotte, the plaintiffs traded the trailer for another. Evidence of its condition at that time was excluded upon objection.

At the close of plaintiffs' evidence the defendant's motion for nonsuit was allowed. Plaintiffs appealed.

*Pittman, Pittman & Pittman for plaintiff appellants.*
*Webb & Lee by Charles Sedberry for defendant appellee.*

SHARP, J.   Plaintiffs have misconstrued the nature of the cause of action which they have stated. It is not in contract but in tort. *Pinnix v. Toomey,* 242 N.C. 358, 362, 87 S.E. 2d 893; 12 Am. Jur., Contracts, Section 458. *Council v. Dickerson's, Inc.,* 233 N.C. 472, 64 S.E. 2d 551.

The following observations of the Oklahoma Court in *Jackson v. Central Torpedo Company,* 117 Okla. 245, 246 Pac. 426, 46 A.L.R. 338, are pertinent:

> " 'If the transaction complained of had its origin in a contract which placed the parties in such a relation that, in attempting to perform the promised service, the tort was committed, then the breach of the contract is not the gravamen of the suit. The contract in such case is mere inducement, creating the state of things which furnishes the occasion of the tort, and in all such cases the remedy is an action on the case. For illustration, take the contract of a carpenter to repair a house, — the implication of his contract is that he will bring to the service reasonable skill, good faith, and diligence. If he fails to do the work, or leaves the house incomplete, the only remedy against him is ex contractu; but suppose he, by want of care or skill, destroys or wastes material, or makes the repairs so unskillfully as to damage other portions of the house; this is tort, for which the contract only furnished the occasion. *Mobile L. Ins. Co. v. Randall,* 74 Ala. 170.' "

However, the relief to which plaintiffs are entitled is determined by the evidence and not the conclusions of the pleader or the prayer for relief. 3 N. C. Index, Pleadings, Section 4, p. 610.

It is plaintiffs' contention that when Barnes attached defendant's short dog to the trailer, possession and control of the trailer passed to the defendant and there was a bailment; that thereafter the trailer was damaged while in defendant's possession and proof of this damage entitled plaintiffs to go to the jury under the *prima facie* case rule stated in *Hanes v. Shapiro,* 168 N.C. 24, 84 S.E. 33; *Insurance Co. v. Motors, Inc.* 240 N.C. 183, 81 S.E. 2d 416, and many other cases. The *prima facie* rule is not applicable here; plaintiffs have no need of it. They know exactly how the damage to the trailer occurred. Mrs. Smith was an eye witness to the entire fiasco. *Insurance Co. v. Motors, Inc., supra.*

It matters not whether the relationship between plaintiffs and defendant was that of bailor and bailee. A contractual relationship exist-

ed between them, and out of that relationship arose the defendant's duty to exercise due care to protect the plaintiffs' trailer. *Insurance Asso. v. Parker,* 234 N.C. 20, 65 S.E. 2d 341. As defendant frankly concedes in his brief, "(W)hile Barnes was performing defendant's contract with plaintiffs to move the trailer from its original location in Richmond County to Rock Hill, South Carolina, Barnes was under a duty to exercise reasonable care not to cause damage to said trailer."

The evidence was plenary that the negligence of Barnes caused the trailer to become stuck in the mud, but defendant contends that if the trailer were damaged, the damage occurred while it was being removed from the mud by the wrecker. Defendant argues that he is not responsible because, upon being informed that the trailer was stuck, he instructed Barnes to unhook the short dog from it, return to his place of business and leave the trailer alone. It is not necessary to decide what defendant's liability would have been had these instructions been followed by Barnes and by defendant himself. They were not. When Mrs. Smith insisted that defendant comply with his contract he came to the scene himself. Defendant admits in his brief that "there is evidence that he (defendant) was telling Barnes how to get the trailer unstuck." He maintains, however, that there is no evidence that these instructions proximately caused damage to the trailer. With this contention we cannot agree.

The trailer had front, back and side hitches. Under defendant's direction the short dog was hooked to the side of the trailer, the wrecker hooked to the front bumper of the short dog, and the two vehicles together pulled the trailer sideways through the mud. Under the evidence produced, it was for the jury to say whether the defendant should reasonably have anticipated that damage to the trailer would result from this method of extraction.

"On motion to nonsuit, plaintiff's evidence is to be taken as true and all the evidence considered in the light most favorable to plaintiff, giving him the benefit of every fact and inference of fact pertaining to the issues which may be reasonably deduced from the evidence." 4 N. C. Index, Trial, Section 21, p. 312.

The motion for nonsuit was erroneously granted.

Since this case goes back for trial by jury, plaintiffs' assignment of error No. 2 merits attention. Paul Many, a contractor with fifteen years experience "in this business," testified that he examined the trailer on February 13, 1962 in Charlotte. Upon objection, his proffered testimony with reference to its condition on that date was excluded. Many first saw the trailer three years after the alleged damage had occurred; repairs had been made or attempted; it had been moved

three times. The trial judge reasoned that his evidence was too remote to throw any light on the difference in the value of the trailer immediately before and immediately after the injury on February 13, 1959. The exclusion of this evidence was not error.

"Within what range as to place and time witnesses shall be confined in their testimony to the value of personal property, when its value comes in question, must often depend upon the circumstances of the case and be in the discretion of the trial judge." 15 Am. Jur., Damages, Section 349.

For the reasons herein stated the judgment below is
Reversed.