**PEPSI COLA BOTTLING CO. OF ANCHOR-
AGE, Inc., Appellant,**

v.

**SUPERIOR BURNER SERVICE CO., Inc.,
Appellee.**

No. 625.

Supreme Court of Alaska.

May 19, 1967.

Warren Matthews, Jr., and Theodore M. Pease, Jr., of Burr, Boney & Pease, Anchorage, for appellant.

Daniel A. Moore, Jr., and James K. Singleton, of Delaney, Wiles, Moore & Hayes, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

RABINOWITZ, Justice.

Appellant instituted this action in the superior court where it sought recovery of damages resulting from appellee's purported failure to properly repair a boiler. Appellant based its complaint on separate causes of action sounding both in tort (negligence) and in contract (breach of an implied warranty). After trial by a jury a general verdict in appellee's favor was returned and a judgment dismissing appellant's causes of action were thereafter entered.

Appellant contends that a new trial is required because of the trial court's failure to give any "limiting" instruction in regard to the applicability of certain evidence which, without such an instruction, could possibly have been considered by the jury in its determination of the contributory negligence issue. Appellant further argues that it is entitled to a new trial because of the lower court's refusal to instruct the jury on its separate cause of action based upon breach of implied warranty.

Appellant was engaged in the business of bottling, canning, and marketing Pepsi Cola products and other beverages in Anchorage, Alaska. In 1958 appellant had constructed a processing plant in which it installed two boilers to furnish heat and steam needed to carry out its manufacturing operations. Originally the boiler in ques-

tion was oil-fired but during the month of October 1963 appellant had appellee convert it to natural gas. In the early morning hours of December 2, 1963, one of appellant's employees discovered that the boiler in question was not operational. Appellee was then called and requested to "check the * * * boiler and get it started." Two of appellee's employees responded to this request and succeeded in refiring the boiler shortly before noon. Later in the day the boiler "was discovered to be firing without any water and in an extremely overheated" and damaged condition.

In its tort cause of action appellant alleged that appellee's negligence consisted in the failure of its employees "to discover the lack of water in the boiler" and "to examine the boiler for the presence of water" prior to relighting the boiler.[1] In its answer appellee pled, in part, the defense of contributory negligence.

The evidence developed at the trial was in sharp dispute as to what services appellee's employees were asked to perform in regard to the malfunctioning boiler; as to what appellee's employees undertook to accomplish in regard to the boiler; as to what, if anything, appellee's two employees said to appellant's employees, more particularly, whether appellee's employees disclosed that the repair was of temporary character,

whether they indicated the need to have the boiler thoroughly cleaned, and whether they warned of the necessity of blowing down the lines and keeping a periodic check (every half hour or hour) on the boiler.[2]

Of particular significance to the issues in this appeal is the fact that during the trial appellee elicited evidence which concerned the condition, and improper maintenance by appellant, of the boiler prior to the event which occurred on December 2, 1963.[3]

On the several occasions when evidence of this character was offered, appellant's counsel objected and requested that the trial judge give a limiting instruction to the effect that any evidence of appellant's improper maintenance of the boiler prior to December 2, 1963, was not to be considered by the jury in regard to the question of whether appellant had been contributorily negligent after appellee had refired the boiler on December 2. Appellant's position, both at trial and here, is that although evidence of this nature was admissible in regard to the value of the boiler and damages in general, the jury should have been instructed that this evidence was neither relevant to, nor was to be considered, in deciding the contributory negligence issue. In overruling appellant's initial objection to this line of testimony, the trial judge stated that the matter was one that "should be handled in the Court's overall instructions given at the end of the case."[4]

1. In an amended complaint appellant added an additional cause of action which also sounded in tort. In this new cause of action appellant alleged that appellee's employees were
 negligent in returning the boiler to service without completely cleaning the water column line and float chamber and in addition, in failing to warn the plaintiff that further operation of the boiler was dangerous and hazardous.

2. It is undisputed that after appellee's employees completed their work on the boiler appellant's employees did not check or look at the boiler until 4 p.m. of that same day when it was discovered that the boiler was firing without water and was in an extremely overheated condition. At this time the boiler was shut off.

3. The bulk of this evidence as to appellant's prior lack of care, and the condition of the boiler, was focused on the condition of the boiler at the time it was converted by appellee to a gas-fired boiler in October 1963. The jury also heard testimony from a state boiler inspector as to the condition of the boiler on May 11, 1963. Also introduced was the testimony of appellant's general manager as to the plant's maintenance practices in regard to the boiler.

4. At the same time the court also stated that "I don't think we can get any place in each little step of the proceedings telling the jury, 'Now consider it for this purpose, but not for this purpose.'"

At the conclusion of the trial court's charge to the jury, appellant objected to the court's refusal to give its requested limiting instruction which read:

> Whether the plaintiff had properly maintained the boiler before the defendant was called in to make repairs on December 2, 1963, is irrelevant to the issue of the defendant's liability. Failure of the plaintiff to properly maintain the boiler before December 2, 1963 does not, as a matter of law, constitute contributory negligence.

■ On the other hand, the jurors were instructed that if they found "that the incident in question was proximately caused by the contributory negligence" of appellant, then appellant was precluded from any recovery.[5]

In the instructions which were given to the jury, no differentiation was made between evidence of appellant's negligent maintenance of the boiler prior to December 2, 1963, and evidence of appellant's acts and omissions relating to the boiler, which occurred subsequent to appellee's refiring of the boiler on December 2. Review of the record further discloses that at no point during the trial were the jury given any instruction concerning the purposes for which this evidence had been admitted.

■ Appellee's initial line of argument is that since appellant's requested limiting instruction was erroneous, the trial court was under no obligation to give it.[6]

The subject of requested instructions is covered by Civil Rule 51(a) which provides in part:

> At the close of the evidence or at such earlier time during the trial as the court reasonably directs, any party may file written requests that the court instruct the jury on the law set forth in the requests.[7]

---

5. The trial court further instructed the jury that

> the degree of negligence of the parties is of no consequence * * * even though the negligence of the plaintiff was slight * * * the plaintiff is not entitled to recover because recovery is barred by contributory negligence.

In Mitchell v. Knight, 394 P.2d 892, 896 (Alaska 1964), we expressed our disapproval of such an instruction because of the possibility that it could have been interpreted as requiring a lesser degree of proof to establish contributory negligence and in turn subjecting the plaintiff to a higher degree of proof. Harris v. Barrett & Lesh, Inc., Opinion No. 404, 426 P.2d 331 (Alaska 1967) and Bertram v. Harris, Opinion No. 393, 423 P.2d 909 (Alaska 1967), presented occasions where we reiterated our disapproval of such an instruction.

6. Appellee contends that the requested instruction was erroneous because evidence of the prior condition of the boiler and appellant's negligence in regard thereto was relevant to the issue of causation; was relevant in regard to the question of appellant's knowledge of the danger of continued operation of the boiler in light of alleged warnings it had received from appellee's employees; that such evidence could be considered on the issue of contributory negligence (i.e., evidence of habit) and was corroborative of evidence as to appellant's negligent maintenance on December 2. (Note: It is undisputed that appellant did nothing in the way of maintenance after the boiler was refired until it was found in an overheated condition.)

In Groseth v. Ness, Opinion No. 370, 421 P.2d 624, 632 (Alaska 1966) (footnote omitted), we were not faced with the precise issue which is raised in the case at bar. There we did say by way of dicta:

> Since this instruction did not correctly state the law as to estoppel (we consider it deficient in regard to the element of reliance) the giving of this instruction could have possibly misled the jury and, therefore, the trial court correctly refused this proposed instruction.

Groseth is distinguishable in that we held that there was no evidence warranting submission of an estoppel issue to the jury. In the case at bar the evidence as to contributory negligence was sufficient to permit the issue to go to the jury.

7. This rule of civil procedure is textually identical to Rule 51 of the Federal Rules of Civil Procedure.

Also pertinent is the provision of Civil Rule 51(b) which states in part:

The court shall instruct the jury on all matters of law which it considers necessary for their information in giving their verdict.

 It is established that if the requested instruction is defective, the court is under no duty to give it or to supply a correct instruction.[8] Assuming appellant's requested limiting instruction was erroneous, the trial court correctly refused to give it. But this is not the end of our inquiry. Numerous authorities have concluded that if the defective, or erroneous, requested instruction directs the court's attention to an issue which the jury has not been instructed upon but which is necessary to enable the jury to intelligently determine the case, "the court's error in failing to charge may not be excused by technical defects in a request to charge."[9]

 We hold that the court's refusal to give any limiting instruction concerning appellant's allegedly improper maintenance of the boiler prior to December 2, 1963, was error under the circumstances appearing in this record. By virtue of counsel for appellant's numerous objections on this point made during the course of the trial, by virtue of appellant's requested instruction, and as a result of appellant's objection to the court's refusal to give the requested instruction, the point was unequivocally brought to the attention of the trial judge. As we mentioned earlier, in its instructions the trial court did not at any time distinguish between acts and omissions on appellant's part which occurred prior to December 2, 1963, and the events which transpired on December 2 after appellee's employees left appellant's plant. We are of the opinion that the trial judge in his charge should have informed the jury that any evidence of appellant's negligent maintenance of the boiler prior to December 2 was not, in and of itself, a sufficient basis for a finding of contributory negligence on appellant's part.[10] Due to this omission, the issue of appellant's contributory negligence was not fairly presented to the jury. Without any limiting instruction the jury could have concluded that appellant was contributorily negligent solely because of its negligent maintenance of the

8. 2B Barron & Holtzoff, Federal Practice and Procedure § 1102, at 447, (rev. ed. 1961).

9. See the following decisions: Richardson v. Walsh Constr. Co., 334 F.2d 334, 338 (3d Cir. 1964); Chicago & N. W. Ry. Co. v. Rieger, 326 F.2d 329, 334 (8th Cir. 1964); Oliveras v. United States Lines Co., 318 F.2d 890 (2d Cir. 1963); Beaty Shopping Center, Inc. v. Monarch Ins. Co. of Ohio, 315 F.2d 467 (4th Cir. 1961); Alaska Airlines v. Oszman, 12 Alaska 667, 181 F.2d 353 (9th Cir. 1950); Chicago & N. W. Ry. Co. v. Green, 164 F.2d 55, 61–62 (8th Cir. 1947).

In the Barron & Holtzoff treatise on federal procedure, it is stated:

If the judge properly and fully states the law applicable to the case, refusal to give specified requests or further requests is not improper. It has been held that if the requests are defective, the court is under no independent duty to supply a correct instruction. This however is not the invariable rule. If

the request directs the court's attention to a point upon which the jury has not been charged but upon which an instruction would be helpful, the court's error in failing to charge may not be excused by technical defects in a request to charge.

Barron & Holtzoff, supra note 8, at 447–448. See id. § 1105, at 470. Contra, Stewart v. Capital Transit Co., 70 App.D.C. 346, 108 F.2d 1 (1939), cert. denied, 309 U.S. 657, 60 S.Ct. 515, 84 L. Ed. 1006 (1940).

10. In so holding, we again emphasize that at no point during the trial did the judge instruct the jury as to the permissible purposes for which the evidence was being admitted. It is also apparent that this evidence was relevant as to causation and knowledge issues amongst others. For purpose of our holding, we have assumed that appellant's requested instruction was an inaccurate and incomplete statement of the law under the circumstances appearing in the record.

boiler prior to December 2, 1963.[11] We are of the opinion that this omission in the court's charge to the jury was prejudicial error.[12]

■■ Although we agree with appellee's contention that evidence of appellant's prior negligent maintenance was admissible and relevant in regard to the damage issues in the case, this fact did not negate the necessity of the court drawing the distinction mentioned for the purpose of assisting the jury in its consideration of the contributory negligence issue.[13] When evidence possesses multiple relevancy "leading to distinct inferences or as bearing upon different issues" and such evidence is competent as to some issues but incompetent as to others, the trial judge, upon request, should instruct the jury as to the permissible and impermissible uses of such evidence.[14] We agree with the trial judge's view that the timing of such an instruction, or instructions, should be left to the judge's discretion and that an instruction need not be given every time an occasion arises during the trial.[15] But in the case at bar the jury was never instructed as to the permissible uses of the evidence which related to appellant's prior negligence.

The second major issue in this appeal relates to appellant's breach of implied warranty cause of action. As to this cause of action appellant alleged that appellee "contracted * * * to examine the * * * boiler and to restore it to service and warranted that it would do so in a safe and workman-like manner." [16] Appellant specifies as error the trial court's refusal to give its requested instruction which encompassed this breach of an implied warranty cause of action. This requested instruction read:

When the defendant contracted and undertook with the plaintiff to remedy the plaintiff's boiler problem, the defendant warranted to do the job of repairing the boiler in a workmanlike manner. If you find that the defendant did not repair the boiler in a workmanlike manner and this resulted in the damage to the boiler, the defendant is liable to the plaintiff for the plaintiff's damages.

The trial judge, in concluding not to give appellant's proposed instruction, reasoned that the substance of the requested instruction was sufficiently covered by the text of another instruction which set forth the standard of care and skill required of appellee's employees in relation to the services they were requested to perform. The in-

11. In Saslow v. Rexford, 395 P.2d 36, 43 (Alaska 1964), instructions of the type which "could have confused the jury and clouded the true issues they were required to decide" were held erroneous. In Veal v. Newlin, Inc., 367 P.2d 155, 156 (Alaska 1961), reference was made to the requirement that an instruction must fairly present a given issue to the jury.

12. See the following authorities distinguishing harmless error from prejudicial error: Alaska Brick Co. v. McCoy, 400 P.2d 454, 456 (Alaska 1965); Zerbinos v. Lewis, 394 P.2d 886, 889–890 (Alaska 1964); Mitchell v. Knight, 394 P.2d 892, 896 (Alaska 1964).

13. As we pointed out in note 6 supra, appellee also argues that this evidence was admissible as proof of appellant's habitual and/or customary negligent maintenance of the boiler. We need not decide this issue because it is undisputed that after appellee's employees refired the boiler appellant's employees did not check the boiler prior to 4 p.m. that afternoon when it was discovered that the boiler was firing without water.

14. McCormick, Evidence § 59, at 135–136 (1954); Accord, 1 Wigmore, Evidence § 13 (3d ed. 1940).

15. See the trial court's comments set forth in note 4 supra.

16. Appellant's warranty allegations further assert that appellee failed to perform its examination, repair and refiring of the boiler in a workmanlike manner in that it failed to ascertain that the boiler was not receiving a proper flow of water and that as a result of the defendant's failure to perform its contract in a workman-like and safe manner, the plaintiff's boiler became overheated and was destroyed and the plaintiff suffered * * * direct and consequential damages * * *.

struction which the trial judge considered sufficient reads as follows:

The defendant held itself out to the public generally as a qualified burner and boiler repair service. The defendant was required to exercise that degree of care and skill in handling the job for which it was called by the plaintiff which a reasonably prudent, skilled and qualified boiler repair man would exercise under the circumstances. If the defendant failed to use that degree of care and skill in performing the task, it was negligent toward the plaintiff and is liable to the plaintiff for the plaintiff's damages, if such negligence was the proximate cause of plaintiff's damage.

We are called upon to decide whether, in light of the circumstances of this record, appellant, under its oral service contract with appellee, had the right to go to the jury upon a separate cause of action for breach of an implied warranty to repair in a workmanlike manner, in addition to the tort cause of action.[17] This is an area of law which has engendered considerable confusion.[18]

■ An appropriate starting point, we believe, is to isolate those factors which are not pertinent to the resolution of this issue. As we have indicated, we are not concerned here with a purported breach of an express warranty or contract condition.[19] Nor are we concerned with any statutory implied warranties such as are found in our Uniform Commercial Code provisions relating to the sale of goods.[20] Further, in this area of the law strict liability has not been imposed upon those who have agreed to furnish labor or services.[21] We also consider it appropriate to mention that appellant's right to maintain a tort cause of action un-

17. This question is apparently one of first impression in this jurisdiction. Silverton v. Marler, 389 P.2d 3 (Alaska 1964), is not dispositive of the issue because that case involved determination of the applicable statute of limitations in regard to a paying guest who slipped upon the icy entrance of the defendant's lodge. There we were asked to resolve whether the tort or contract statute of limitations was applicable.

18. See Prosser, Torts § 93, at 635 (3d ed. 1964), where the author writes: "The relationship between the remedies in contract and tort presents a very confusing field, still in the process of development, in which few courts have made any attempt to chart a path."

19. Compare Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897 (1962); Yeager v. Dunnavan, 26 Wash.2d 559, 174 P.2d 755 (1946).

20. AS 45.05.096 of the Uniform Commercial Code provides:
Implied warranty: merchantability; usage of trade. (a) Unless excluded or modified (§ 100), a warrant that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind. Under this section the serv-

ing for value of food or drink to be consumed either on the premises or elsewhere is a sale.
\* \* \* \* \*
(c) Unless excluded or modified (§ 100), other implied warranties may arise from course of dealing or usage of trade.
AS 45.05.098 of the Uniform Commercial Code further provides:
Implied warranty: fitness for particular purpose. If the seller at the time of contracting has reason to know a particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is, unless excluded or modified under § 100 of this chapter, an implied warranty that the goods shall be fit for that purpose.

21. Compare with the strict liability which has been imposed upon sellers of chattels. For a general discussion of this particular area of the law see Prosser, op. cit. supra note 18, § 97, at 672–96; Prosser, The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L. Rev. 791, 817 (1966). On the basis of the arguments presented, we do not believe that policy considerations justify extension of strict liability to one rendering boiler repair services.

der the facts of this case has not been questioned and is clearly established in law.[22]

Precedent can be found to the effect that where a person undertakes to render personal services he has the duty to perform such services in a workmanlike manner. This duty to perform in a workmanlike manner is implied as a provision of the party's agreement in the absence of an express agreement to that effect.[23] There are also authorities holding that a party who asserts a breach of a contractor's duty of workmanlike conduct is limited to his tort cause of action.[24]

Whether the tort standard of care is considered, or the duty of care imposed by an implied warranty of workmanlike performance is taken as the applicable standard, in our view the resultant standard of care required of appellee's employees in the circumstances of this case is identical. In both instances the standard of care is imposed by law and under either theory there is no difference in the standard of

22. In discussing the relationship between tort and contract action, it is stated in Prosser, op. cit. supra note 18, at 639 that:

> The principle which seems to have emerged from the decisions in the United States is that there will be liability in tort for misperformance of a contract whenever there would be liability for gratutious performance without the contract—which is to say, whenever such misperformance involves a forseeable, unreasonable risk of harm to the interests of the plaintiff.

See Restatement (Second) of Torts § 404 (1965) which reads:

> One who as an independent contractor negligently makes, rebuilds, or repairs a chattel for another is subject to the same liability as that imposed upon negligent manufacturers of chattels.

Jewell v. Dell, 284 S.W.2d 92, 96 (Ky. 1955); Central & Southern Truck Lines, Inc. v. Westfall GMC Truck, Inc., 317 S.W.2d 841, 844–846 (Mo.App.1958); Zierer v. Daniels, 40 N.J.Super. 130, 122 A.2d 377, 378–379 (1956).

23. George v. Goldman, 333 Mass. 496, 131 N.E.2d 772, 773 (1956); Brush v. Miller, 208 S.W.2d 816, 818 (Mo.App.1948); R. Krevolin & Co. v. Brown, 20 N.J.Super. 85, 89 A.2d 255, 257 (1952); Gore v. Sindelar, 48 Ohio Law Abst. 317, 74 N.E. 2d 414, 416 (Ohio App.1947); Brown v. Eakins, 220 Or. 122, 348 P.2d 1116, 1117–1120 (1960) and 4 Williston, Contracts § 1014, at 2792 (rev. ed. 1936), where it is stated:

> The employee's promise of service, whether express or implied, includes an obligation to do the work for which he is employed diligently and in a reasonably skillful way, and this is equally true of an independent contractor. * * * [I]n a contract of employment it is implied that the services shall be of the character which is customary in performing contracts of the kind in question.

See Harzfeld's, Inc. v. Otis Elevator Co., 114 F.Supp. 480, 484 (W.D.Mo. 1953); In re Talbott's Estate, 184 Kan. 501, 337 P.2d 986 (1959).

24. In Aegis Productions, Inc. v. Arriflex Corp. of America, 25 A.D.2d 639, 268 N. Y.S.2d 185, 187 (1966), the court said:

> Warranties are limited to sales of goods. No warranty attaches to the performance of a service * * *. If the service is performed negligently, the cause of action accruing is for that negligence.

Accord, Audlane Lumber & Builders Supply, Inc. v. D. E. Britt Associates, Inc., 168 So.2d 333, 335 (Fla.App.1964); Quitmeyer v. Theroux, 144 Mont. 302, 395 P.2d 965, 969 (1964); Firemen's Mut. Ins. Co. v. High Point Sprinkler Co., 266 N.C. 134, 146 S.E.2d 53, 60 (1966); Peele v. Hartsell, 258 N.C. 680, 129 S.E.2d 97 (1963). Similarly, warranties will not be implied where the services in question are those of a professional or consultant character. Gagne v. Bertran, 43 Cal.2d 481, 275 P.2d 15, 19–21 (1954); Carr v. Lipshie, 8 A.D.2d 330, 187 N.Y.S.2d 564 (1959), aff'd, 9 N. Y.2d 983, 218 N.Y.S.2d 62, 176 N.E.2d 512 (1961).

See the following authorities which discuss both tort and contract actions: National Fire Ins. Co. of Hartford v. Westgate Constr. Co., 227 F.Supp. 835, 837–838 (D.Del.1964); Fire Ass'n of Philadelphia v. Allis Chalmers Mfg. Co., 129 F.Supp. 335, 348–349 (N.D.Iowa 1955); Eads v. Marks, 39 Cal.2d 807, 249 P.2d 257, 260 (1952); Garden City Floral Co. v. Hunt, 126 Mont. 537, 255 P.2d 352, 354–355 (1953).

care required of the party rendering the personal services.

Characterization of the gist, of gravamen, of appellant's cause of action in the factual context of this case is not free of difficulties.[25] Whether an action is one in contract or tort may have significant procedural and substantive ramifications.[26] In the case at bar appellant's central argument in support of its contention that it was entitled to go to the jury on both a tort cause of action and breach-of-an-implied-warranty-of-workmanlike-quality cause of action is that contributory negligence would not be a bar to recovery under the latter.

We are of the opinion that under the facts of this case the trial court did not err in refusing to instruct on the appellant's implied warranty cause of action. We are not persuaded that in these circumstances there exists an independent cause of action for breach of an implied warranty, or that appellant's reliance on the contributory negligence distinction is determinative.

We have already alluded to our conclusion that under either the tort or contract theory the standard of care required of appellee is the same. Under either theory the standard of care is one imposed by law and not by any term of the parties' agreement.[27] In such a situation we believe that the gravamen of appellant's lawsuit is in tort for negligence. In Jackson v. Central Torpedo Co.[28] the court said:

'If the transaction complained of had its origin in a contract which placed the parties in such a relation that, in attempting to perform the promised service, the tort was committed, then the breach of the contract is not the gravamen of the suit. The contract in such case is mere inducement, creating the state of things which furnishes the occasion of the tort, and in all such cases the remedy is an action on the case. For illustration, take the contract of a carpenter to repair a house, the implication of his contract is that he will bring to the service reasonable skill, good faith, and diligence.

**25.** In Prosser, op. cit. supra note 18, at 642 the author states:
> Frequently, where either tort or contract will lie and inconsistent rules of law apply to the two actions, the question arises whether the plaintiff may elect freely which he will bring, or whether the court must itself decide that on the facts pleaded and proved the 'gist' or 'gravamen' of his cause of action is one or the other. As to this the decisions are in considerable confusion, and it is difficult to generalize.

**26.** See Prosser, op. cit. supra note 18, at 639–643 where the author alludes to differences in applicable statutes of limitations and damages recoverable between the two types of actions.

**27.** In Audlane Lumber & Builders Supply, Inc. v. D. E. Britt Associates, Inc., 168 So.2d 333, 335 (Fla.App.1964), the court stated:
> With respect to the alleged 'implied warranty of fitness,' we see no reason for application of this theory in circumstances involving professional liability. Unlike the lower court, however, we do not base our decision on the narrow ground of privity. An engineer, or

any other so-called professional, does not 'warrant' his service or the tangible evidence of his skill to be 'merchantable' or 'fit for an intended use.' These are terms uniquely applicable to goods. Rather, in the preparation of design and specifications as the basis of construction, the engineer or architect 'warrants' that he will or has exercised his skill according to a certain standard of care, that he acted reasonably and without neglect. Breach of this 'warranty' occurs if he was negligent. Accordingly, the elements of an action for negligence and for breach of the 'implied warranty' are the same. The use of the term 'implied warranty' in these circumstances merely introduces further confusion into an area of law where confusion abounds.
> See Roscoe Moss Co. v. Jenkins, 55 Cal. App.2d 369, 130 P.2d 477, 481 (1942); Garcia v. Color Tile Distributing Co., 75 N.M. 570, 408 P.2d 145, 148 (1965); Lewis v. Scott, 54 Wash.2d 851, 341 P.2d 488, 492–493 (1959); Peterson v. Sinclair Refining Co., 20 Wis.2d 576, 123 N.W.2d 479, 482–484 (1963).

**28.** 117 Okl. 245, 246 P. 426, 428, 46 A.L.R. 338 (1926).

\* \* \* [S]uppose he, by want of care or skill, destroys or wastes material, or makes the repairs so unskillfully as to damage other portions of the house; this is tort, for which the contract only furnished the occasion.[29]

■ Although there are decisions which have characterized a breach of an implied warranty of workmanlike quality as a contract action, we are not persuaded that in this case the gist of appellant's lawsuit is other than for tort.[30] Few, if any, of the decisions in the area of implied warranties of workmanlike quality in personal service contracts discuss what defenses are available to this type of cause of action.[31] Assuming that we agree with appellant's position that a separate warranty cause of action subsists, we think that the defense of contributory neligence, or the related defense of assumption of risk, would be applicable.[32] As we analyze the facts of the case (still assuming the existence of a warranty cause of action), appellee also had available to it a defense pertaining to

29. See Quitmeyer v. Theroux, 144 Mont. 302, 395 P.2d 965, 969–970 (1964); Peele v. Hartsell, 258 N.C. 680, 129 S.E. 2d 97, 99 (1963); Morriss v. Barton, 200 Okl. 4, 190 P.2d 451, 457 (1948); Murray v. Aetna Cas. & Sur. Co., 61 Wash. 2d 618, 379 P.2d 731, 733 (1963).

30. Note, Implied Warranties in Service Contracts, 39 Notre Dame Law. 680 (1964).
 We distinguish the products liability (i. e., strict liability line of case) involving defective goods. See Vandermark v. Ford Motor Co., 61 Cal.2d 256, 37 Cal. Rptr. 896, 391 P.2d 168, 170–172 (1964); Greenman v. Yuba Power Products, Inc., 59 Cal.2d 57, 27 Cal.Rptr. 697, 377 P.2d 897, 900–901 (1962); Aced v. Hobbs-Sesack Plumbing Co., 55 Cal.2d 573, 12 Cal.Rptr. 257, 360 P.2d 897, 902 (1961); Perfecting Service Co. v. Product Development Sales Co., 261 N.C. 660, 136 S.E. 2d 56 (1964). We also note as Prosser points out in The Fall of the Citadel (Strict Liability to the Consumer), 50 Minn.L.Rev. 791, 800–805 (1966), that in essence the courts have worked out a tort-strict liability concept in the products liability area rather than a contract-warranty basis of liability.
 Also not in point are those cases dealing with the warranty of fitness for the intended purpose. See Kuitems v. Covell, 104 Cal.App.2d 482, 231 P.2d 552, 554 (1951).

31. Even in the strict liability area of the products-liability cases, courts have held the defense of contributory negligence applicable to such actions. See Prosser, supra note 30, at 838–840, where he writes:
 Where the negligence of the plaintiff consists only in failure to discover the danger in the product, or to take precautions against its possible existence, it has uniformly been held that it is not a bar to an action for breach of warranty. Thus if he eats a wormy candy bar, or drives negligently on a defective tire, without being aware of the defect, his recovery is not barred, even though he ought to have discovered it. This is entirely consistent with the rule applied to other strict liability involving animals, or abnormally dangerous activities. But if he discovers the defect, or knows the danger arising from it, and proceeds nevertheless deliberately to encounter it by making use of the product, his conduct is the kind of contributory negligence which overlaps assumption of risk; and on either theory his recovery is barred. This too is consistent with the law as to other strict liability. There has been as yet no case involving the strict liability in tort which discards warranty, but it appears quite certain that the same rules will apply.
 It is always possible that the plaintiff's negligence may consist of an abnormal use of the product, and whether there is discovery of the danger or not, the recovery may be barred on that ground.
 See Cintrone v. Hertz Truck Leasing & Rental Service, 45 N.J. 434, 212 A.2d 769, 782 (1965). There are products-liability cases where the defense of contributory negligence was said to be inapplicable. Brown v. Chapman, 304 F.2d 149, 153, 4 A.L.R.3d 490 (9th Cir. 1962); Hansen v. Firestone Tire & Rubber Co., 276 F.2d 254, 257–258 (6th Cir. 1960); Simmons v. Wichita Coca-Cola Bottling Co., 181 Kan. 35, 309 P.2d 633, 635 (1957).
 See Prosser, op. cit. supra note 18, § 95, at 656–657; Rosenbaum, Contributory Negligence as a Defense to Warranty Actions, 39 Temp.L.Q. 361 (1966).

32. See note 31 supra and Annot., 4 A.L.R. 3d 501, 503–505 (1965).

issues of causation.[33] In our view this last mentioned defense merges with the defenses of contributory neglience and assumption of risk which were available to appellee in the tort cause of action. [34]

We, therefore, hold that the trial court correctly refused to instruct the jury on appellant's implied warranty cause of action. We believe that the standard of care instruction, which the trial court gave the jury, adequately presented appellant's case to the jury. In reaching this conclusion, we reiterate our opinion that under the facts of this case, appellant's asserted implied warranty-contract cause of action is in substance a tort cause of action to which normal negligence defenses are available. We are not convinced that this case presents an appropriate instance for application of the doctrine of strict liability to one who performs personal services.

For the foregoing reasons the superior court's refusal to instruct on the breach of an implied warranty theory is · affirmed. We reverse as to the superior court's failure to give any limiting instruction in regard to the contributory negligence issue.

The case is remanded for new trial.

NESBETT, Chief Justice (concurring).

I concur in the result. the majority reaches, although I am not in accord with

33. Appellee's position was that it advised appellant that the boiler could not be operated safely if it were not thoroughly cleaned; that it advised appellant that the repairs were only temporary and the boiler must be watched at least every half hour during its operation to prevent burning up; that it warned of the necessity to blow down the lines hourly, otherwise it was unsafe to operate the boiler; that it warned of the danger if its instructions were not followed. Appellee further points out that appellant totally omitted to follow any of its instructions which, if believed by the jury, would defeat any recovery under the warranty cause of action.

34. Compare Maiorino v. Weco Products Co., 45 N.J. 570, 214 A.2d 18, 19–20 (1965), which involved products liability-warranty issues. There the court said:
 As we pointed out in Cintrone, the authorities in various jurisdictions are in confusion and seeming conflict on the subject of availability of the defense of contributory negligence in products liability cases based on breach of express or implied warranty of fitness. The various texts and cases referred to therein reveal that most jurisdictions bar plaintiff's recovery where his misuse or abuse of the product in combination with a defect in the product, brings about his personal injury, or where he continued to use the product with knowledge, actual or constructive, of its defective condition, or where the mishap and consequent injury resulted from failure to follow use directions to which his attention was plainly called; and the like. The defensive concept has been expressed at times in terms of assumption of risk, that a party can-

not recover for a loss that he could have averted by the exercise of due care, and by contributory negligence.
* * *

When considering the problem of effect of plaintiff's own conduct we became convinced that in the concept of liability in warranty or strict liability cases there is nothing to justify holding the defendant responsible for the consequences of plaintiff's own proximate contributory carelessness. If such carelessness cannot be separated from the consequences of defendant's breach of warranty or breach of the duty which gives rise to strict liability, in justice plaintiff cannot be permitted to recover for his personal injury and sequential damages. Simply stated, we are of the view that where a plaintiff acts or fails to act as a reasonably prudent man in connection with use of a warranted product or one which comes into his hands under circumstances imposing strict liability on the maker or vendor or lessor, and such conduct proximately contributes to his injury, he cannot recover. In short, in our judgment the well known principle of contributory negligence in its broad sense is sufficiently comprehensive to encompass all the variant notions expressed in the cited cases as a basis for refusing plaintiff a recovery when his own lack of reasonable care joined or concurred with the defect in the defendant's product as a proximate cause of the mishap and his injury. A manufacturer or seller is entitled to expect a normal use of his product. The reach of the doctrine of strict liability in tort in favor of the consumer should not be extended so as to negate that expectation.

the method of disposing of the question of the limiting instruction.

It is my understanding that the majority opinion is not intended to modify that portion of Civil Rule 51(a) which states:

> No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection.

The objection registered by appellant to the failure of the court to give the requested instruction has been found by this court to have satisfied the above quoted portion of Civil Rule 51(a). The court has also found that a limiting instruction similar to the requested instruction should have been given under the requirements of that portion of Civil Rule 51(b) which states:

> The court shall instruct the jury on all matters of law which it considers necessary for their information in giving their verdict.

In my opinion, the foregoing would be all that need be said on the issue. The ambiguity of the majority opinion in its present form and the factual inapplicability of many of the authorities cited in footnotes 8 and 9 will require clarification in the future.[1]

1. Numerous federal decisions have construed Rule 51 of the Federal Rules of Civil Procedure, which is similar to the above quoted provisions of Alaska's Civil Rule 51(a). See e.g., Cherry v. Stedman, 259 F.2d 774, 777–778 (8th Cir. 1958); Nesbit v. Everette, 243 F.2d 59 (5th Cir. 1957); Baltimore & O. R. v. Felgenhauer, 168 F.2d 12, 18 (8th Cir. 1945).